Williams, J.
On the 14th day of March, 1876, F. H. Kock, and Louisa, his wife, executed and delivered, at Cincinnati, Ohio, to Louisa and Heinrich Schmidt, then also husband and wife, a written instrument acknowledging the loan of four hundred dollars to the makers, which they promised to repay to the Schmidts at any time, with eight per cent, interest.
On the 16th day of December, 1872, on the joint application of F. H. Kock and his wife Louisa, a policy of insurance was issued by the Home Insurance Company of Brooklyn, on the life of the husband, in the sujn of three thousand dollars, payable upon the usual conditions contained in such policies, within sixty days after’ satisfactory proof of loss, to said Louisa Kock, or in the event of her death prior to that of the assured, to his surviving children share and share alike, or in the event of no children surviving, then to the legal representatives of the insured.
It appears that the premiums on the policy, which amounted of $23.01, quarterly, payable in December, March, June and September of each year, subject to reduction by participation in certain expected profits, were paid by the husband regularly up to within a year of his death, and those accruing in that year *357 were paid by the wife out of her own earnings. The premiums paid when the instrument hereinbefore mentioned was executed by Kock and his wife, amounted, in the aggregate, after deduction of profits, to about three hundred dollars; and the policy contained a provision that on its surrender after the full amount of two or more annual premiums were paid, the company would issue a paid up policy for the amount of the premiums paid, less the amount retained as dividends. No surrender was made, nor paid up policy issued; and,,in January, 1880, her husband having died, Louisa Kock received the full amount of the insurance money. She was afterward married to a Mr. Sticken, whom she survives, and the action below was brought against her by that name. The petition alleges that Heinrich Schmidt died in 1894, and the plaintiff became and is the sole owner of the obligation sued on; and that, when it Avas executed the defendant was the owner of a separate estate which she intended to, and did charge with the payment of the debt so contracted. Issue was taken on these allegations, and the question in the case is, whether the defendant’s interest in the insurance policy or its proceeds, constituted, when the instrument in suit was executed, her separate property which she thereby could, and did, charge with the payment of that obligation; it not being claimed that she possessed any other property.
Since the execution of the instrument the powers of married women to enter into contracts, and the remedies thereon against them, have been materially enlarged. Under the law then in force, with a few exceptions not important here, they were incapacitated by coverture to create a personal legal liability by contract, or bind their general estate. The extent of *358 their contractual capacity Avas to charge their separate estate, in equity, for their obligations; and the remedy was to pursue and subject such property to their satisfaction; personal judgment on which execution could issue Avas not authorized. 63 O. L.,. 47.
Phillips v. Graves, 20 Ohio St., 371; Williams v. Urmston, 35 Ohio St., 296; Avery v. Vansickle, Ib., 270.
The personal property which then constituted a separate estate that the married woman could charge Avith her debts, consisted of such property of that kind as belonged to her at her marriage, or came to her during coverture by gift, bequest, or inheritance, or by purchase with her separate means, or became due as Avages of her separate labor, or grew out of a violation of her personal rights. 68 O. L., 48.
To give rise to an intention to charge her separate estate by her contract, and create such a charge upon it, it was essential that such property should belong to her at the time the contract Avas entered into. And it was the settled law that her engagement entered into when she had no separate property would not bind property thereafter acquired, nor would such after acquisition give validity to a previous engagement entered into when she Avas not the owner of a separate property. Avery v. Vansickle, supra; Jenz v. Gugel, 26 Ohio St., 527; Fallis v. Keys, 35 Ohio St., 265, 266. Little, if any aid, in arriving at the nature of the defendant’s interest in the policy in question, is afforded by the statute in force when it was issued, relating to insurance by the wife on the life of her husband. That statute provided that a married woman might, in her own name, cause her husband’s life to be insured for her sole use; and in ease she survived, the insurance should be paid to her, for her sole *359 use, free from any claims of his representatives or creditors. 69 O. L., 159. It did not contain the provision now found in section 3629, of the Revised Statutes, that, if the policy, by its terms, is payable to a married woman solely for her use, she may sell, assign or surrender the same, the husband uniting therein. Even if the latter provision had been in force when the policy was issued to the defendant, it is not apparent how her interest in it would be enlarged or affected thereby, or how such a result follows from the former provision which was then in force. Both provisions, it will be noticed, are applicable only to policies in which the wife is the sole beneficiary named, and which are issued for her sole use. The defendant’s policy was not of that nature, and not within the purview of the statute. By its terms the children and personal representatives of the insured were made beneficiaries, and had an interest of the same general nature as that of the defendant, though more remote. The interest of each depended on the contingency of survivorship; and, it seems evident that she could not, by a sale of the policy without the consent of the other beneficiaries, any more than could they by sale without her consent, confer any title on the purchaser, nor could either, without the concurrence of all, surrender the policy, or accept a paid up one in its stead. A judicial sale of the policy in an action against the defendant alone, could have no different effect. An interest so unascertainable, separate from that of the other beneficiaries, and of such unappreciable value, can scarcely be regarded as a separate property which the defendant intended to charge, or could charge with the burden of the contract in suit. An attempt to pursue it by action would be barren of any practical result. For this *360 reason, presumably, the claim of the plaintiff in that direction is not pressed with much earnestness. The principal reliance of the plaintiff is placed on the proposition that the insurance money, when paid to the defendant, took the place of the policy, and by relation became her separate property as of the time of the contract. This position, we think, cannot be maintained. The augmented value of the policy arising from the payment of the premiums and performance of its conditions subsequent to the contract, resulting in the final collection of the insurance money, was after acquired property, which after acquisition, as has already been seen could not relate back so as to give validity to a contract invalid when made, or become chargeable for its satisfaction.
Judgment reversed, and judgment for plaintiff m error.
Minshall, C. J., Btjrket, Speab, Davis and Shauck, JJ., concur.